## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | |
|---|---|
| **MONTRAYGO DRAKE** | **CIVIL ACTION NO. 3:13-cv-2405** |
| **LA. DOC #421476** | |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ROBERT G. JAMES** |
| **WARDEN TIM KEITH** | **MAGISTRATE JUDGE HAYES** |

### REPORT AND RECOMMENDATION

*Pro se* Petitioner Montraygo Drake, an inmate in the custody of Louisiana's Department

of Corrections, filed the instant Petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254

on July 31, 2013.  [doc. # 1].  Petitioner attacks his 2009 convictions for possession with intent to

distribute a controlled dangerous substance and possession of a firearm by a convicted felon, as

well as the concurrent sentences of 20 and 15 years imposed by the Fourth Judicial District

Court, Ouachita Parish.  This matter has been referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of

the Court.

### Background

The underlying facts in this case have been set forth by the Louisiana Second Circuit

Court of Appeal as follows:

> On June 19, 2008, Officers Jeremy Kent and Brandon Waggoner of the Monroe
> Police Department responded to a 911 call regarding a fight at 4105 Owl Street.
> Upon arrival at the residence, they encountered Shantez Conway, who was standing
> in the carport area and who said that a man and woman were fighting inside. They
> could hear shouting and what sounded like items being thrown or broken. When no
> one answered the door in response to knocking, Officer Kent banged on the door
> until it was opened by the defendant, who was shirtless and appeared agitated. The
> defendant told the officers that he had called 911, but that assistance was no longer
> needed. However, the officers could see a woman inside sitting bent over and
> apparently crying. They asked the defendant to step outside, which he did but began
> shouting that the police were not allowed in his house. Officer Kent entered the

house to check on the woman, while Officer Waggoner remained outside with the defendant.

The woman, Tiaunna Nave, seemed shaken and had bruises and scratches around her neck, shoulder, and arms.[1] Her tank top t-shirt appeared stretched and her hair was disheveled. While inside the house Officer Kent detected a chemical odor that he immediately associated with Phencyclidine ("PCP").

After directing Nave outside for questioning, Officers Kent and Waggoner conducted a "protective sweep" of the residence. Officer Waggoner also detected the scent of PCP upon entering the residence. While conducting the sweep, they noticed in plain view a brown bottle in one bedroom, and a rifle with a cut off stock and a pistol in another bedroom. They unloaded and secured the guns for officer safety and then exited the residence. It was later discovered that the pistol had been reported stolen to the Ouachita Parish Sheriff's Office. The police also learned that Drake had a prior felony conviction for simple robbery, which would prohibit him from legally possessing a firearm.

The police then obtained a search warrant for the residence. The search of the home produced two brown bottles, one containing PCP and the other containing some PCP residue; a bag containing 1.4 grams of marijuana; and a pack of More cigarettes. Officer Kent also noticed empty More cigarette packs on the floor. He explained that More cigarettes are dipped in PCP and then sold for about $10 per cigarette. He further explained that because tobacco products attract rats, there is a police department policy prohibiting the seizure of tobacco products. Also seized from the defendant was $240 in cash, mostly in denominations of $5, $10, and $20, along with a driver's license issued on June 6, 2008, which was 13 days before the arrest. The driver's license had 4105 Owl Street as the defendant's home address.

*State v. Drake*, 37 So. 3d 582, 585-86 (La. App. 2 Cir. 2010).

On August 20, 2008, Petitioner was charged by bill of information with one count of possession of Phencyclidine ("PCP") with intent to distribute, one count of possession of a firearm by a felon, one count of illegal possession of a stolen firearm, one count of possession of marijuana, and one count of domestic abuse battery.  [doc. # 11-3, p. 4].  The misdemeanor charges for possession of marijuana and domestic battery were severed from the other charges

---

[1] In the trial transcript, Ms. Nave's first name is spelled Tiana. However, her identification card, a copy of which is included in the record, along with a request to drop charges signed by her, indicates [that] the correct spelling of her first name [is] Tiaunna.

prior to the jury trial.  *Drake*, 37 So. 3d at 586.  On May 6, 2009, a jury returned a verdict of guilty as charged on all three of the remaining counts.  [doc. # 11-4, p. 27].  On May 13, 2009, the State filed a second bill of information charging Petitioner as a habitual offender.  *Id.* at 43. At the habitual offender hearing on July 30, 2009, the trial court sentenced Petitioner to 20 years at hard labor without benefit of probation, parole, or suspension of sentence for possession with intent to distribute PCP, 15 years at hard labor without benefit of probation, parole, or suspension of sentence for being a felon in possession of a firearm, and 5 years at hard labor for illegally possessing a stolen firearm.  [doc. # 11-13, p. 66-67].  The court ordered all of the sentences to be served concurrently.  *Id.*

On November 23, 2009, Petitioner appealed, raising an insufficient evidence claim and an ineffective assistance of counsel claim.  [doc. # 11-14, p. 7].  On May 19, 2010, the appellate court affirmed Petitioner's convictions for possession of PCP with intent to distribute and possession of a firearm by a felon but reversed his conviction for illegal possession of a stolen firearm.  [doc. # 11-17, p. 2].  The Louisiana Supreme Court denied Petitioner's application for writs on January 14, 2011.  [doc. # 11-18, p. 1].  The United States Supreme Court denied Petitioner's petition for writ of certiorari on April 22, 2013.  [doc. # 11-25, p. 1].

On May 23, 2011, Petitioner filed a *pro se* application for post-conviction relief in the trial court, raising two claims: (1) illegal search and seizure and (2) ineffective assistance of counsel.  [doc. # 11-18, p. 2].  On June 15, 2011, the court denied Petitioner's application.  *Id.* at 65.  On July 5, 2011, Petitioner sought further collateral review before the Second Circuit Court of Appeal.  [doc. # 11-19, p. 3].  On September 15, 2011, the Second Circuit denied Petitioner's application for relief.  The Louisiana Supreme Court likewise denied Petitioner's application on September 14, 2012.

Petitioner filed the instant Petition on July 31, 2013, requesting relief for ineffective assistance of counsel and an illegal search and seizure.  [doc. # 1].  Petitioner also requests an evidentiary hearing.  [doc. # 1-1, p. 12].

The matter is now before the undersigned.

## Law and Analysis

### I.        Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision."  *Id.* at 740.  Under the "unreasonable application" clause, a federal *habeas* court

may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## II.    Petitioner's Claims

A. Illegal Search and Seizure

At first glance, the initial Petition only raises one claim: ineffective assistance of counsel due to counsel's failure to file a motion to suppress.  [*See* doc. # 1-1, p. 1].  But upon closer examination, it appears that Petitioner also raises a Fourth Amendment illegal search and seizure claim.  [*Id.*; doc. # 12].  In brief, Petitioner argues that the State violated his Fourth Amendment rights by introducing evidence seized from the 4105 Owl Street residence because the responding officers did not have a warrant to search the residence and there were no exigent circumstances that served to excuse the warrant requirement.  [doc. # 1-1].

Petitioner is not, however, entitled to federal *habeas corpus* relief on this claim.  The Supreme Court held, in *Stone v. Powell*, 428 U.S. 465, 482 (1976), that when "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  The Fifth Circuit applies this bar to *habeas* review as long as the State afforded the defendant an opportunity to litigate the issue, whether or not the defendant availed himself of the opportunity.  *See ShisInday v. Quarterman*, 511 F.3d 514, 525 (5ᵗʰ Cir. 2007) (*citing Janecka v. Cockrell*, 301 F.3d 316, 320-21 (5ᵗʰ Cir.

2002); *Williams v. Brown*, 609 F.2d 216, 220 (5ᵗʰ Cir. 1980) ("[I]t is the existence of state processes allowing an opportunity for full and fair litigation of fourth amendment claims, rather than a defendant's use of those processes, that serves the policies underlying the exclusionary rule and bars federal habeas corpus consideration of claims under *Stone v. Powell*.").  "[I]n the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits, *Stone* forecloses review."  *Moreno v. Dretke*, 450 F.3d 158, 167 (5ᵗʰ Cir. 2006) (citation and internal quotation marks omitted).

Here, Petitioner does not argue that the Louisiana courts routinely or systematically prevent the actual the adjudication of Fourth Amendment claims.[2]  Moreover, the Court notes that "[i]t is beyond cavil that Louisiana courts provide criminal defendants the opportunity to raise Fourth Amendment claims."  *Bailey v. Cain*, 2007 WL 1198911, at *13 (E.D. La. Apr. 20, 2007).  Accordingly, Petitioner's Fourth Amendment claim is barred from review and should be **DENIED**.

B. Request for an Evidentiary Hearing

Petitioner argues that, if given the opportunity to present evidence at a hearing, he could prove the Fourth Amendment claim underlying his ineffective assistance claim by demonstrating

---

[2] In fact Petitioner adjudicated this Fourth Amendment claim on post conviction review. [doc. # 11-18].  Although the trial court, in an apparent misstatement, stated that the claim was procedurally barred because it was "fully litigated on appeal," the court went on to decide the claim on its merits, finding that "there was no illegal search as the evidence seized was in plain view of the responding officers."  Moreover, even if the trial court had failed to reach the claim's merits, "the bar of *Stone v. Powell* still applies, despite the fact that the consideration of the fourth amendment claim by a state habeas court had been prevented by the court's error in holding that the claim had already been presented."  *Christian v. McKaskle*, 731 F.2d 1196, 1199 (5ᵗʰ Cir. 1984).

that the officers illegally entered the residence without a warrant and that the officers did not have a "compelling reason to conduct a 'protective sweep.'"  [doc. # 1-1, p. 12].[3]

As discussed by the Supreme Court in *Cullen*, 131 S. Ct. at 1400-01, the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2).  A court "shall not hold an evidentiary hearing on the claim unless the applicant shows that the claim relies on a new rule of constitutional law . . . or a factual predicate that could not have been previously discovered through the exercise of due diligence, and the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C.A. § 2254(e)(2).  The Court in *Cullen* also stated that where these factors are not met, evidence presented for the first time on federal *habeas* review may not be considered.  *Cullen*, 131 S. Ct. at 1400-01.  Further, even overcoming the narrow restrictions of § 2254(e)(2) does not guarantee a petitioner an evidentiary hearing, it merely opens the door for one.  Once a petitioner overcomes the obstacles of § 2254(e)(2), under Rule 8 of the Rules Governing § 2254 cases, the district court retains discretion over the decision to grant an evidentiary hearing.  *McDonald v Johnson*, 139 F.3d 1056, 1060 (5th Cir. 1998).

Here, there is no basis for so doing.  Petitioner does not base his claim on a new rule of constitutional law, nor does his claim of ineffective assistance rely on a factual predicate that

---

[3] Petitioner also claims, briefly, that the state *habeas* court erred in refusing to hold an evidentiary hearing on this claim.  [doc. # 1-1, p. 14].  This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court."  *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001).  An attack on the State habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue in federal *habeas*.  *Id.* at 320; *see also Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Lackawana Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 402-03 (2001) (*citing Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (no constitutional right to state post-conviction review)).

could not have been previously discovered through the exercise of due diligence.  Petitioner does not state what evidence an evidentiary hearing would uncover or even how any evidence that a hearing might produce would bolster his claim.  In fact, Petitioner does not contest the officers' version of events and argues only that the circumstances did not justify warrantless entry into the residence and did not justify a protective sweep.  In other words, Petitioner only raises issues of law.  Accordingly, Petitioner's request for an evidentiary hearing should be **DENIED**.[4]

C. Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective for failing to move to suppress the evidence that the responding officers found in the 4105 Owl Street residence.  [doc. # 1-1, p. 14].  Petitioner argues that counsel should have filed a motion to suppress because the officers did not obtain a search warrant before entering his home.  *Id.* at 8.  Even if the officers lawfully entered the residence, Petitioner argues that "there were no exigent circumstances justifying [the] decision to conduct a so called 'protective sweep' without first obtaining a warrant."  *Id.* at 9.[5]

---

[4] Petitioner argues that he should be granted an evidentiary hearing because the Second Circuit Court of Appeal, on direct appeal, stated the following: "Though the record contains some relevant testimony regarding [ineffective assistance of counsel], particularly that of the officers involved, neither the defense nor the state had the opportunity to fully address this issue at the trial court level. Thus, in the interest of justice, we will not address this issue on appeal because it is one that may be raised in post-conviction relief proceedings which afford the opportunity for a full evidentiary hearing."  [doc. # 1-1, p. 12].  However, the Second Circuit's opinion is not binding on this Court.  In addition, while both this Court and the Second Circuit review the ineffective assistance claim under *Strickland,* the specific question before this Court is whether the state *habeas* court's application of the *Strickland* standard was unreasonable . . . a question that differs significantly from the question before the Second Circuit.  Stated differently, this Court can adequately address a claim by examining a record that may not be detailed enough to satisfy the Second Circuit's standard of review.

[5] Petitioner also argues that counsel was ineffective for failing to "object to the chain of custody of the evidence obtained" and to object to "Officer Kent testifying as an expert in the field of narcotics distribution."  [doc. # 1-1, p. 14].  Petitioner does not explain or elaborate on these claims.  Petitioner's conclusory claims of ineffective assistance cannot provide the basis for

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thornton*, 646 F.3d 199 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the petitioner of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right.  *Strickland v. Wash.*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the ineffectiveness of counsel prejudiced him.  *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance."  *Id.* at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that counsel's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *U.S.*

---

any relief.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (conclusory claims of ineffective assistance of counsel do not entitle one to federal habeas relief).

*v. Saenz-Forero*, 27 F.3d 1016, 1021 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir.

1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not

deprive the defendant of any substantive or procedural right to which the law entitles him."

*Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th

Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim,

*Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the

defendant demonstrates that he would have received less jail time.  *U.S. v. Grammas*, 376 F.3d

433, 436 (5th Cir. 2004).

When review is governed by the AEDPA, review of the state court's resolution of the

ineffective assistance of counsel claim is "doubly deferential," *Knowles v. Mirzayance*, 556 U.S.

111, 112 (2009), since the question is "whether the state court's application of the *Strickland*

standard was unreasonable."  *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).  Importantly,

"[t]his is different from asking whether defense counsel's performance fell below *Strickland's*

standard," because the "state court must be granted a deference and latitude that are not in

operation when the case involves review under the *Strickland* standard itself."  *Id.*  Consequently,

"even a strong case for relief does not mean the state court's contrary conclusion was

unreasonable."  *Id.* at 786.  To obtain relief, a Petitioner must show that the state court's ruling

on the claim was "so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-

87.

Here, although Petitioner's underlying Fourth Amendment claim is barred from review,

the Court notes that the restriction on federal *habeas* review of Fourth Amendment claims

announced in *Stone v. Powell*, *supra*, does not extend to Sixth Amendment ineffective assistance

of counsel claims because those claims are founded primarily on incompetent representation. *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986).  As the Supreme Court stated in *Kimmelman*, "[w]hile defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced by respondent, the two claims are nonetheless distinct, both in nature and in the requisite elements of proof."  *Id.* at 374. "Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.  *Id.* at 375. This rule is consistent with the general rule that counsel is not required to make futile motions. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (holding that an attorney cannot be judged deficient for his failure to raise a frivolous issue).

Upon consideration, the Court cannot say that Petitioner has overcome the strong presumption of attorney competence established by *Strickland* because Petitioner has failed to show that any motion to suppress would have been successful.  That is to say, Petitioner has failed to show that his underlying Fourth Amendment claim was meritorious.

To begin with, Petitioner likely did not have standing to contest the search of the Owl Street residence because he did not have a reasonable expectation of privacy there.  "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978); *see also Simmons v. U.S.*, 390 U.S. 377, 389 (1968) (the "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own

protection was infringed by the search and seizure.").  "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134 (citations omitted).  In that vein, individuals who do not live in a residence, are not overnight guests of the residence, or are merely on the premises with the owner's consent do not have standing.  *Minn. v. Carter*, 525 U.S. 83, 90-91 (1998).

Here, while the record does contain evidence that Petitioner's driver's license listed the Owl Street address, other evidence, including Petitioner's own statements at trial, indicate that Petitioner did not reside in the Owl Street home.  In fact, Petitioner's entire defense was predicated on the argument that the home was not his and that, consequently, anything found inside did not belong to him.   For instance, in a Motion for Mistrial, Petitioner stated that the evidence was found "in my grandfather's house."  [doc. # 11-5, p. 4].  Witness Tiana Nave similarly stated that Petitioner did not reside at the Owl Street residence.  [doc. # 11-12, p. 43].  Defense counsel, in closing argument, emphasized that "it's really not disputed that it was his grandfather's house."  [doc. # 11-13, p. 40].  Simply put, Petitioner either lacked the required standing to challenge the intrusion into the Owl Street home, or he could not properly raise the defense he relied on at trial.

Alternatively, assuming that Petitioner did have standing to claim the protection of the Fourth Amendment, the evidence was **seized** pursuant to a valid search warrant.  [*See* doc. # 11-11, p. 65].  Petitioner does not challenge the validity of the warrant; rather, he argues that the warrant cannot justify the officers' search because it was issued after the search was conducted.  However, the initial search was justified pursuant to a valid protective sweep.  In addition, while the officers did enter the premises and search it before the search warrant was issued, they did not

12

seize any of the items until after the warrant was issued.  Thus, the protective sweep justified the

search, the search results provided probable cause for the warrant, and the warrant then justified

the seizure.

The officers first entered the Owl Street residence to render emergency aid to Ms. Nave.

While "searches and seizures inside a home without a warrant are presumptively unreasonable,"

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006), there are several well-established

exceptions to the warrant requirement.  One exception permits warrantless entry into a home

when officers need to "render emergency assistance to an injured occupant or to protect an

occupant from imminent injury."  *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011).  This

emergency aid exception "requires only 'an objectively reasonable basis for believing' that a

person within [the house] is in need of immediate aid."  *Michigan v. Fisher*, 558 U.S. 45, 47

(2009) (internal citations omitted).  In *Brigham City*, for example, officers responded to a call

regarding a loud party at a residence.  *Brigham City*, 547 U.S. at 400-01.  When they arrived on

the scene they heard shouting and saw that a fight between four adults and a juvenile was taking

place in the house.  *Id.*  After the adults forcefully pushed the juvenile, the officers entered the

house to break up the fight.  *Id.*  The Supreme Court held that the warrantless entry was justified

because under "these circumstances, the officers had an objectively reasonable basis for believing

both that the injured adult might need help and that the violence in the kitchen was just

beginning."  *Id.* at 406.

Under the circumstances here, it was plainly reasonable for the officers to enter the home

because they had an objectively reasonable basis for believing that Ms. Nave required immediate

assistance.  Officer Kent testified that he heard the following when he arrived on the scene of the

domestic disturbance call: "As I was approaching the driveway you could hear shouting coming

from inside the house.  Some items being thrown or dropped or broken or something to that effect.  More than anything just screaming back and forth."  [doc. # 11-11, p. 54].  Responding officer Waggoner testified similarly.  [doc. # 11-12, p. 61].  Both officers then testified that, after vigorously knocking on the door, Petitioner opened the door and they could see a woman, Ms. Nave, bent over, crying, and bruised.  [doc. #s 11-11, p. 55, 57; 11-12, p. 61].  Further, Officer Waggoner testified that Petitioner appeared irate and mad.  [doc. # 11-12, p. 62].  Officer Kent testified that Petitioner was "real hot . . . hyper acting" and "on edge."  [doc. # 11-11, p. 55].  Considering that the officers were responding to a domestic disturbance call, that they heard shouting and items breaking, that Petitioner appeared irate, and that Ms. Nave appeared to require immediate medical attention, it is clear that the officers' entry, like the entry in *Brigham City*,  was reasonable and lawful.

The officers then lawfully searched the premises pursuant to a "protective sweep."[6]  "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  The following requirements are necessary to justify a protective sweep: (1) the police must have entered legally and for a legitimate law enforcement purpose; (2) the officers must have a reasonable, articulable suspicion that the area to be swept contains a person posing a danger; (3) the sweep must be limited to a cursory inspection of only those spaces where a person may hide; and (4) officers must conclude the sweep once they have dispelled their reasonable suspicion of

---

[6] The record indicates that Petitioner was arrested outside of his home.  [doc. # 11-11, p. 56].  The Fifth Circuit has recognized that a protective sweep can be lawful even if the arrest occurs outside of the residence.  *U.S. v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006), *abrogated on other grounds by Kentucky v. King*, 131 S. Ct. 1849 (2011).

danger.  *U.S. v. Mata*, 517 F.3d 279, 286 (5th Cir. 2008) (citing *U.S. v. Gould*, 364 F.3d 578, 587

(5th Cir. 2004) , *abrogated on other grounds by Kentucky v. Wing*, 131 S. Ct. 1849, 1859 (2011).

As to the first factor, and as explained above, Officers Kent and Waggoner legally, and

for a law enforcement purpose, entered the residence.  With regard to the second factor, the

officers had an arguably reasonable suspicion that the area harbored persons posing a danger to

themselves or to Ms. Nave.  The officers had already spotted one individual, Shantez Conway,

under the home's carport before they entered the residence.  [doc. #s 11-11, p. 53-54; 11-12, p.

60].  The officers also detected what they described as the unmistakable odor of PCP in the

residence.  [doc. #s 11-11, p. 58; 11-12, p. 64].  When considering the evidence that one

individual was lurking around the scene unrestrained, that PCP odor filled the residence, and that

an unidentified number of individuals were shouting and breaking objects inside the residence, it

is clear that the officers could reasonably conclude that more individuals might have been present

and might have posed a danger.  *See, e.g., U.S. v. Rodriguez*, 601 F.3d 402, 406 (5th Cir. 2010)

(holding that officers could reasonably have suspected that an unaccounted-for person, in the

context of a volatile domestic dispute situation, might access a firearm and use it against them

even where they were not told that other people were in the residence).  With regard to the third

and fourth factors, it is clear that the officers cursorily inspected spaces where persons might

have been hiding, and ended their sweep when any reasonable suspicion was dispelled.[7]

_____

[7] Officer Kent testified that the sweep lasted approximately one minute.  [doc. # 11-11, p. 63].

During the protective sweep, the officers found what appeared to be PCP on the floor of a bedroom and guns lying on a box spring mattress in another room.[8]  [doc. #s 11-11, p. 60, 61; 11-12, p. 64, 65].  The officers recognized the PCP because of the noxious odor, because it was contained in a brown bottle,[9] and because it was immediately adjacent to packs of More cigarettes.[10]  Similarly, the incriminating nature of one of the guns was readily apparent because the gun had a cutoff stock.  [doc. # 11-11, p. 61].[11]  The undersigned has no difficulty in concluding that the evidence the officers observed provided the necessary probable cause for issuing the search warrant.[12]  *See U.S. v. Green*, 634 F.2d 222, 225 (5th Cir. 1981) (probable cause to search exists when the facts would warrant a reasonable person to believe that the objects sought in connection with a crime will be found).  Once the warrant was issued, the police had a lawful right to seize the items.

Synthesized, Petitioner has not shown that, had a motion to suppress been filed, it would have been granted; thus, Petitioner fails to show that he was denied effective assistance in connection with counsel's failure to file a motion to suppress.

Perhaps more importantly, and as the foregoing analysis indicates, counsel was not ineffective for failing to file a motion to suppress because had he done so he would have

---

[8] Officer Kent testified that the guns were "on the box springs part of the bed because the mattress was kind of pushed off of the bed laying over on the side of it."  *Id.* at 61.

[9] Officer Kent testified that PCP is commonly stored in a dark brown bottle.  *Id.* at 60.

[10] Officer Waggoner testified that More cigarettes are commonly dipped into PCP.  [doc. # 11-12, p. 64-65].

[11] The officers did not seize the PCP or firearms at this point in time.  [doc. # 11-11, p. 60, 63].

[12] Again, Petitioner does not argue that the warrant was issued without probable cause.

16

eviscerated his initial defense theory that the evidence seized did not belong to Petitioner.
Counsel was left with a decision: either argue that the evidence seized did not belong to
Petitioner because Petitioner did not reside in the Owl Street home or argue that Petitioner did
reside in the Owl Street home (i.e. argue that Petitioner had standing) and then challenge the
legality of the officers' search and seizure.  Counsel made the strategic decision not to present
both defenses and chose instead to argue only the former of the mutually exclusive theories.
Ultimately, this Court cannot fault counsel's strategic decision not to present two alternative,
contradictory defenses.  *See Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong
presumption . . . that, under the circumstances, the challenged action might be considered sound
trial strategy."); *Yarborough v. Gentry*, 540 U.S. 1, 7 (2003) ("When counsel focuses on some
issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons .
. . .").

The Court also highlights the fact that the state *habeas* court denied Petitioner's
ineffective assistance claim, holding that "there was no illegal search as the evidence was in plain
view of the responding officers."  [doc. # 11-18, p. 66].  It should be noted that the plain view
doctrine was technically inapplicable because the officers did not seize the items when they first
became plainly visible.  *See Horton v. California*, 496 U.S. 128, 134 (1990) ("If 'plain view'
justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an
exception that is addressed to the concerns that are implicated by seizures rather than by
searches.").  However, because the items were in plain view, the officers could have seized them
without waiting for the added precaution of the search warrant.  *See id. at* 135 (Where the initial
intrusion that brings the officers within plain view of incriminating evidence is supported, not by
a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also

17

justified).  To that extent, as well as for the reasons explained above, the state court's ultimate

determination–that the search was not illegal–was reasonable.  *See Schriro v. Landrigan*, 550

U.S. 465, 473 (2007) (The question "is not whether a federal court believes the state court's

determination was incorrect but whether [it] was unreasonable—a substantially higher

threshold.").  Accordingly, federal *habeas* relief is precluded and this claim should be **DENIED**.

<u>Conclusion</u>

For the reasons stated above, **IT IS RECOMMENDED** that the Petition for *habeas*

*corpus* filed by Petitioner Montraygo Drake, [doc. # 1], be **DENIED and DISMISSED WITH**

**PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by

this Recommendation have **fourteen (14) days** from service of this Report and Recommendation

to file specific, written objections with the Clerk of Court.  A party may respond to another

party's objections within **fourteen (14) days** after being served with a copy of any objections or

response to the District Judge at the time of filing.  A courtesy copy of any objection or response

or request for extension of time shall be furnished to the District Judge at the time of filing.

Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE**

**SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 14th day of February, 2014.

KAREN L. HAYES
U.S. MAGISTRATE JUDGE